13888

LEE v. TRAVELERS' INS. CO. OF HARTFORD, CONN.

(175 S. E., 429)

186

*Mr. W. G. Sirrine,* for appellant,

*Messrs. Mann & Plyler,* for respondent,

July 19, 1934.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

January 18, 1897, the Travelers' Insurance Company issued to Joseph Lee its policy No. 90668, whereby it insured the life of Joseph Lee in the sum of $1,000.00, with his wife, Eliza H. Lee, as the named beneficiary. The policy was of the character known as a 20-year premium policy; that is to say, at the end of 20 years if the annual premiums have been duly paid, the policy becomes a paid-up one, and the amount of the insurance becomes payable to the named beneficiary upon the death of the insured.

In January, 1922, the company lent to Joseph Lee the sum of $526.00; the loan to mature January 18, 1923. The loan was made upon the security of the policy, and was evidenced by a written contract. It was not paid on maturity, but was carried on, and interest paid until January 18, 1931. The insured died September 15, 1931. Notice of the death of Joseph Lee was given the company, and upon its failure to settle the claim this action was brought.

The complaint alleges the issuance of the policy and the nature of it; the death of the insured; the notice given the company thereof; the demand for payment and the refusal and neglect of the company to make payment.

The answer of the company admits the issuance of the policy and the death of the insured; denies that it is in-

debted to the plaintiff in the manner and to the amount claimed; alleges that when a loan was made to Joseph Lee, the policy was thereby modified and its value decreased; that the interest was not paid when due, and Joseph Lee was entitled to receive in full settlement cash to the amount of $166.54, and the cancellation of his debt, or a paid-up policy for $240.00, which Joseph Lee accepted; it admits that it is due the plaintiff Eliza H. Lee the sum of $240.00, the amount of the paid-up policy. It admits that at the time of his death Joseph Lee held the policy referred to, and that all the premiums thereon had been paid; that Joseph Lee and Eliza H. Lee, beneficiary named in the policy, applied for and were granted a loan for $526.00 upon the security of the policy; that a loan agreement was made and signed by the Lees, which contained a number of stipulations with reference to the rights of the parties, and certain items modifying the policy; that Lee failed to pay the interest due January 18, 1931; that April 6, 1931, defendant notified Lee that he was in default, the thirty days of grace allowed by the contract having expired, and the defendant offered to extend the time of payment of the interest until May 6, 1931; that in the same letter it offered to increase the loan in order to pay the interest, or to pay Lee the cash equity he had in the policy if he would surrender it, and accept cancellation of the debt; that along with the letter of April 6 was an indorsement, called a "rider," which Lee was instructed to attach to his policy, which showed the cash value of the policy to be $692.54, the amount of the loan to be $526.00, and the amount of Lee's equity to be $166.54, and that this amount had been applied to purchase paid-up life insurance in the amount of $240; that Lee did not answer the letter and the indorsement thus sent him. That defendant has fully complied with the requirements of the various writings constituting the contract between the parties; that when Joseph Lee failed to accept any of the privileges offered to him, he waived any rights he may have had to object to the indorsement or "rider" which the company sent

him; that by retaining the indorsement or "rider," he was estopped from saying that he had not accepted the method of settlement, which the company for his best interest had adopted.

The case was heard by Judge G. B. Greene and a jury.

The evidence in chief for the plaintiff consisted of the policy of insurance sued on; a letter from Travelers' Insurance Company to Joseph Lee dated March 30, 1931; also letter to Mr. Lee from the company dated April 7, 1931.

For the defendant there was introduced a letter from the company to Mr. Lee dated April 6, 1931; the "rider" or indorsement to contract 90668, and the loan contract between the company and Mr. and Mrs. Lee.

In reply the plaintiff presented Perry Lee, the son of Mr. and Mrs. Lee, who testified that, beginning with the first of January, 1931, his father continued to grow more and more feeble until his death in September, 1931; that he was unable to transact any business in the spring and summer of that year; he was unable to read over those letters at that time and make a fair decision as to what was best for his interest; that Joseph Lee never collected the cash surrender value of his policy; he never executed any deed to the company and turned in the policy; the policy was found among his papers, the rider was not attached to the policy, it was in a separate envelope with the name of Travelers' Company on it. The letter from the company was found among his papers, those papers were with it, they had never been detached, they were not signed. Plaintiff offered, also, a letter from the company to Mr. Lee dated January 12, 1931, together with unsigned surrender deed attached to Policy 90668.

When all the evidence was in, counsel for defendant moved for verdict against the insurance company for the sum of $240.00. This is the amount of paid-up insurance which the company contends is all that is due on Policy 90668.

Counsel for plaintiff made a motion for directed verdict in favor of plaintiff for the sum of $1,000.00, with interest at 7 per cent. from September 15, 1931, less the amount of the loan $526.00, with interest thereon from January 18, 1931, at 5.27 per cent.

After argument, his Honor directed the jury to find a verdict for plaintiff as moved for. From the judgment entered on this verdict defendant brings appeal to this Court, on ten exceptions. As we construe these exceptions, they make the following questions for determination by us:

That there was a settlement between Joseph Lee and the company on April 6, 1931, which was binding on him and his wife, the respondent.

That the company had the power under the loan agreement to take the action set forth in the letter of April 6, 1931.

Error to hold that the loan contract contained a forfeiture clause.

Error to hold that the company waived its right to insist upon the forfeiture by Lee because no tender was made of the cash value, viz., $166.54, and no notice was given to Joseph Lee.

That Lee's silence and failure to reply to the letter of April 6, 1931, was sufficient "to make a new contract of insurance with the insured so as to do away with his rights under the original policy."

That it was error to hold that the evidence showed that the insured, in January, 1931, was not able to attend to any kind of business.

We might very well rest the decision of this appeal upon the very clear and concise statement by Judge Greene of his reasons for granting the motion of plaintiff for a directed verdict; but in deference to the very earnest argument of appellant's counsel we proceed to the consideration of the issues made by the appeal.

The contract of insurance, that is to say, the policy, contains no provision for a loan. When, therefore, the insured

sought a loan and his application was granted, it was necessary to make a special contract. The features of that loan contract which are necessary to be considered in the determination of the controversy involved in this case are these:

"3. That in the settlement of any claim, or of any benefit under the contract so pledged, before the loan with accrued interest shall have been fully paid, the Company shall be liable only for the return of the balance of the proceeds of the said claim, or of the said benefit, after deducting the loan and accrued interest, and any other indebtedness due the Company.   *   *   *"

"5(b). If the contract shall not contain a provision as set forth in clause 'a', the Company shall pay to the party of the second part, upon execution and deliverance of a surrender deed upon the Company's form, the excess, if any, of the cash value of the contract pledged (over such indebtedness), and upon any such default and the provisions in such contract of insurance for the payment of the principal sum at death, or for extended term and paid up insurance values, shall be null and void."

The "contract" spoken of in these two excerpts from the loan contract is the policy, or insurance contract, which is the basis of this action.

It may be well to dispose here of the question made in the argument for appellant that no proof of death of Joseph Lee has been furnished to the company, and therefore no duty of settlement devolves on the company until such proof is furnished.

The contention is without merit. No such position is taken in the pleadings. On the contrary, the answer admits the death of Joseph Lee; admits the issuance of the policy, which Lee "held at the time of his death." Admits that it owes the plaintiff, under the terms of the contract, on the policy, the excess cash value, $166.54, or $240.00, the amount of paid-up insurance, which said surplus cash value would purchase. Moreover, no such issue was made in the Court below, nor is there any exception covering it.

Under the rule it cannot be considered.

The appellant, by proper exceptions, contends that there was a settlement on April 6, 1931, between the company and Joseph Lee, which was binding on him, and, therefore, on his wife, the beneficiary under the policy.

It appears from the record that on March 28, 1931, Joseph Lee wrote the company asking that the company return to him the policy which was pledged as security for the loan. This was done. The interest on the loan became due January 18, 1931, and was not paid. April 6, 1931, the company wrote Joseph Lee that the interest was past due, and sent him an indorsement or "rider" to be attached to his policy. This rider shows that the total cash value of the policy was $692.54; that the amount of the loan was $526.-00; that the cash equity of the insured was $166.54; and that "such equity has been applied to purchase paid-up life insurance in the amount of $240.00." This rider was not attached to the policy, but was found among Joseph Lee's papers after his death, in an envelope bearing the name of Travelers' Insurance Company. The letter which contained the rider contained the following:

"In lieu of the equity paid-up life insurance as set forth in the endorsements the Company will be pleased to consider one of the following options upon your request, if made by May 6, 1931:

"1. Accept the interest and continue the insurance in force, subject to the loan, for as long as such payment will extend the loan.

"2. Increase the loan to assist in pyaing interest, and thus continue the original insurance in force.

"3. Pay the cash equity upon surrender of the contract and completion of surrender deed.

"If the Company does not hear from you by May 6, 1931, it will assume that the action it has taken as set forth *in the attached endorsement* is accepted by you." (Italics added.)

It is heretofore pointed out that the policy contract contains no provision for loans. Therefore the provisions of clause (a), section 5, of the loan contract, has no application. The appellant contends that the provisions of clause (b), section 5, do apply. That clause provides that upon default "the Company shall pay to the party of the second part, upon execution and delivery of a surrender deed, upon the Company's form, the excess, if any, of the cash value of the contract pledged (over such indebtedness)." Nowhere in the policy contract, nor in the loan contract, is there any provision which authorizes the company to apply this excess value to the purchase of paid-up insurance. Yet that is what the company attempted to do in this instance. When it sent the "rider," stating that it had applied the cash value to the purchase of $240.00 of paid-up life insurance, it sent a surrender deed which it required the insured and the beneficiary to execute and deliver to it before this attempted settlement became effective. The "rider" was never attached to the policy, nor was the surrender deed ever executed and delivered. Yet the appellant contends that because Joseph Lee did not write rejecting the settlement, it became a contract binding upon Lee and his wife, and that they, by Lee's silence, have waived their rights under the policy contract and the loan contract, and are estopped to demand anything more than the $240.00, which is the amount of the paid-up insurance so bought by the company. This proposition cannot be sustained. A contract is an agreement between two or more parties, the preliminary step in the making of which is the offer by one party and the acceptance by the other, in which the minds of the two parties meet and concur in the understanding of the terms. Joseph Lee was under no legal obligation to accept, nor to reply to, the offer which the company had no authority to make. The company might, with equal plausibility, claim that because Joseph Lee did not specifically reject any or all of the three other propositions of settlement, contained in the letter of April 6, 1931, they were one or all of them accepted.

There was no new contract, and the Lees did not waive their rights and are not estopped to assert them.

This conclusion disposes of the contention that the company had the power under the loan contract to take the action set forth in the letter of April 6, 1931. It had no such power.

■ The appellant contends that the presiding Judge erred in holding that the loan contract contained a forfeiture clause.

Section 5, clause (b), of the loan contract, provides that: "If the contract (We interpolate the policy) shall not contain a provision as set forth in clause (a) (It did not) the Company shall pay to the party of the second part upon execution and delivery of a surrender deed upon the Company's form, the excess, if any, of the cash value of the contract pledged (over such indebtedness) and upon any such default, the provisions in such contract of insurance for the payment of the principal sum at death or for the extended term and paid up insurance values shall be null and void."

The plain interpretation of that provision is that if the borrower make default in the payment of the debt evidenced by the loan contract, and does not accept the settlement set out in clause (b) of Section 5 of the loan contract, the insured and the beneficiary forfeit their rights under the policy contract of insurance.

The Circuit Judge was not in error thereabout.

■ Nor was he in error in holding that the company had waived its right to enforce the forfeiture clause of its contract, because it had not tendered to Joseph Lee the equity cash value of $166.54. Lee was not called upon to execute and deliver the surrender deed until the cash equity of $166.54 was paid or tendered to him. This was not done. Instead the company, without authority, applied this cash value to the purchase of paid-up insurance. This disposes of Exceptions 5 and 8.

The disposition made of the contention set out in Exception 2 disposes also of that made in Exception 6.

There is ample evidence to sustain the holding of the Circuit Judge that the insured was unable to attend to any business after January, 1931.

We have considered all of the exceptions, and find no error.

The judgment of the Court below is affirmed.

MR. CHIEF JUSTICE BLEASE, MESSRS. JUSTICES STABLER and CARTER and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.